## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LINDSAY MURILLO and SARA SALERNO,
on behalf of themselves and all others similarly
situated,

                            Case No. 8:20-cv-01494-JSM-SPF

                Plaintiffs,

                            **FIRST AMENDED CLASS ACTION**
     v.                     **COMPLAINT AND DEMAND FOR**
                            **JURY TRIAL**
FLORIDA SOUTHERN COLLEGE,

                Defendant.

_____/

        Plaintiffs Lindsay Murillo and Sara Salerno ("Plaintiffs") bring this action on behalf of

themselves and all others similarly situated against Defendant Florida Southern College ("FSC"

or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their

counsel and based upon information and belief, except as to the allegations specifically

pertaining to themselves, which are based on personal knowledge.

### NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

        1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for

the Spring 2020 academic semester at FSC, and who, because of Defendant's response to the

Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for

which they paid, and/or the services or which their fees were paid, without having their tuition

and fees refunded to them.

        2.      FSC is a private college with an enrollment of over 3,000 students.  The

university offers 50 undergraduate majors and pre-professional programs, graduate programs in

nursing, business, and education, and post-graduate programs in nursing, education, and physical

therapy.  FSC has been named among the most beautiful college campuses in the country.

3.     Plaintiffs and Defendant entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the contractual agreement were set forth in publications from FSC, including the FSC Spring 2020 Semester Course Portal ("Course Portal")[1].

4.     The Course Portal is directed at students and their parents, including Plaintiffs and Class Members.

5.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring 2020 Semester, Plaintiffs and Class Members viewed the Course Portal to make specific course selections prior to registering and paying for selected courses.

6.     The Course Portal provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which courses would be held.  For example, the Course Portal states that Financial Accounting will be held in classrooms in the Becker Business Building and is a "classroom lecture":

| Term: 2019-2020 - Undergraduate Spring | | Division: All | | | Search | Other previously selected search criteria still apply. | | | |
|---|---|---|---|---|---|---|---|---|---|
| ks | Course code | Name | Faculty | Seats Open | Status | Schedule | Credits | Begin Date | End Date |
| | ACC 2111 001 | FINANCIAL ACCT | Clements, Martha Lynn H | 0/40 | Full | TH 12:00 PM-1:45 PM; FSC, Becker, 209 - Classroom Lecture | 4.00 | 1/7/2020 | 4/29/2020 |
| | ACC 2111 002 | FINANCIAL ACCT | Hasson, Brian Keith | 2/45 | Open | MWF 9:25 AM-10:35 AM; FSC, Becker, 112 - Classroom Lecture | 4.00 | 1/7/2020 | 4/29/2020 |
| | ACC 2111 003 | FINANCIAL ACCT | Hasson, Brian Keith | 20/40 | Open | MWF 1:40 PM-2:50 PM; FSC, Becker, 209 - Classroom Lecture | 4.00 | 1/7/2020 | 4/29/2020 |

[1]https://portal.flsouthern.edu/ICS/Portal_Homepage.jnz?portlet=Course_Search&screen=Advanced+Course+Search&screenType=next (last visited 7/23/20).

**FINANCIAL ACCT (ACC 2111 001)**
Instructor(s): Clements, Martha Lynn H ⓘ ✉

| 2019-2020 - Undergraduate Spring, Undergraduate | 4.00 Credit(s) |
| Dept: ACC | Clock Hours: 0.00 |
| Status: Full (0 out of 40 seats) | |

**Note:**   No note is available for this course.

| Course Schedules | | |
|---|---|---|
| Day & Time | Date(s) | Location |
| TH 12:00 PM-1:45 PM | 1/7/2020 - 4/29/2020 | FSC, Becker, 209 |

7.      Other FSC publications refer to the in-person nature of the Spring 2020 Semester course offerings, including course specific syllabi, and the FSC Academic Catalog 2019/2020 ("Academic Catalog").[2]  The Academic Catalog details the policies, procedures, and expectations of FSC students that relate to in-person education and the importance of in-person class attendance.  For example, the Academic Catalog emphasizes that "[c]lass attendance [and] participation in engaged learning activities … are essential college requirements."  *Id.* at 7.  The Academic Catalog likewise notes that "[s]tudents are expected to attend all class and laboratory sessions on time and should be absent only for unavoidable documented reasons."  *Id.* at 33.

8.      In addition, the Academic Catalog highlights FSC's on-campus facilities, such as the Roux Library (described as an "integral part of the intellectual life of the College"), Tûtû's Cyber Café (which Defendant claims "contributes to the educational and social fabric of the campus"), the Rinker Technology Center, and the Nina B. Hollis Wellness Center.  *Id.*  at 31, 35.

9.      FSC's Spring 2020 Semester commenced on or around January 6, 2020, and concluded on or around April 29, 2020.  Plaintiffs and Class Members' payment of tuition and fees were intended to cover in-person education, experiences, and services for the entirety of the Spring 2020 Semester.

10.      On March 12, 2020, FSC announced that because of the global COVID-19

---

[2] https://www.flsouthern.edu/FSC/media/Academics/catalogs/fsc-academic-catalog.pdf (last visited 7/20/20).

pandemic, in-person classes would be suspended on March 13, 2020 for ten days, with classes to resume online on March 23, 2020.  FSC advised students to leave campus and return home, and it anticipated that in-person classes would resume on April 15, 2020.

11.     However, on March 18, 2020, FSC President Anne B. Kerr announced in a campus-wide email that FSC would "proceed with offering remote instruction for the remainder of the semester.  Thus, students will not return to campus, as [] first planned, for classes to resume face-to-face on April 15th."  The email also announced FSC's decision to altogether "close campus buildings[] … and cancel May graduation."  Noting that "at least the next two weeks, [FSC's] buildings must remain closed[,]" President Kerr provided students the empty consolation that FSC would provide "more information about making arrangements for pick-up of items[,]" but warned that "this process might be longer than two weeks."

12.     FSC did not hold any in-person classes from March 12, 2020 through the end of Spring 2020 Semester.  Classes that continued after March 12, 2020 were only provided in an online format, with no in-person instruction.  Additionally, FSC **held no classes** (either in-person or online) from March 13, 2020 through March 23, 2020.

13.     As a result of the closure of Defendant's facilities, Defendant did not deliver the educational services, facilities, access and/or opportunities that Plaintiffs and the putative Class contracted and paid for.  The online learning options being offered to FSC students were subpar in practically every aspect, from the lack of facilities, materials, and access to faculty.  Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options were in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.

14.     Defendant has tacitly admitted that online education is inferior to in-person

education.  For example, Defendant's Academic Catalog stressed that, "[a]ttendance is required for all traditional undergraduate students … because FSC believes that an educational institution based on the liberal arts should expose students to a broad range of issues—religious, aesthetic, moral, as well as intellectual.  It is one of the many ways in which the College is committed to providing educational excellence."[3]  Moreover, Defendant admits that "remote learning plays a very minor role in the educational traditions of Florida Southern," "acknowledges that experiential, engaged learning is the hallmark of the Florida Southern experience," and that "[f]ace-to-face instruction … is the desired method."[4]

15.    Defendant did not provide in-person education, experiences, or related services for approximately 50% of the Spring 2020 Semester.  Plaintiffs did not enter into an agreement with Defendant for online education, but instead sought an in-person education from Defendant.  Plaintiffs and the putative Class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

16.    Defendant also failed to provide 10 days of instruction, in any format, between March 13, 2020 and March 23, 2020.  Both the Course Portal and Academic Catalog spell out FSC's Spring 2020 Academic Calendar.  By failing to provide *any* instruction between March 13,2020 and March 23, 2020, Defendant breached its contract with Plaintiffs and the putative Class to provide classes for the weeks specified in the FSC Academic Calendar.

17.    Through this lawsuit Plaintiffs seek, for themselves and Class members,

___

[3] *Id.* at 34.
[4] https://www.flsouthern.edu/fsc-cares/academics.aspx.

5

Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Semester when classes moved online and campus services ceased being provided.  Plaintiffs and the putative Class also seek disgorgement of the tuition and fees proportionate to the amount of time that no instruction whatsoever was provided (approximately 10 days of Spring 2020 Semester).  Plaintiffs seek a return of these amounts on behalf of themselves and the Class as defined below.

## **PARTIES**

18.     Plaintiff Lindsay Murillo is a citizen of New York who resides in Bronx County, New York.  Ms. Murillo is an undergraduate student at FSC pursuing a bachelor's degree in biology.  The Biology program at FSC relies extensively on in-person instruction, lab work, and access to facilities.  None of the abovementioned resources are available to her while in-person classes were suspended and FSC's campus was closed.  Ms. Murillo paid approximately $18,430 to Defendant for her tuition for the Spring 2020 Semester.  Ms. Murillo made her tuition payments using a credit card under her name and on which she is an authorized user.  Ms. Murillo has not been provided a refund of any tuition monies paid, despite the fact that Defendant failed to provide 10 days of instruction, and that in-person classes were not held after March 12, 2020.  In addition to tuition payments, Ms. Murillo paid Defendant a $315 technology fee and a $75 activity fee for Spring 2020 Semester.  Ms. Murillo has not been provided a refund of any these fees, despite the fact that all students were required to leave campus on March 13, 2020.

19.     Plaintiff Sara Salerno is a citizen of New York who resides in Bronx County, New York.  Ms. Salerno's daughter, Ms. Murillo is an undergraduate student at FSC.  Ms. Salerno paid approximately $18,430 to Defendant for Ms. Murillo's Spring 2020 Semester

tuition.  Ms. Salerno made tuition payments using a credit card on which she is the primary cardmember.  As the primary cardmember, Ms. Salerno is financially responsible for any debt incurred on the account.  Ms. Salerno has not been provided a refund of any tuition monies paid, despite the fact that Defendant failed to provide 10 days of instruction, and that in-person classes were not held after March 12, 2020.  In addition to tuition payments, Ms. Salerno paid Defendant a $315 technology fee and a $75 activity fee for Spring 2020 Semester.  Ms. Salerno has not been provided a refund of any these fees, despite the fact that all students were required to leave campus on March 13, 2020.

20.     Defendant Florida Southern College is a private institution of higher education with its principal place of business at 111 Lake Hollingsworth Drive, Lakeland, Florida 33801.

## JURISDICTION AND VENUE

21.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

22.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS

### Plaintiffs And Class Members Paid Tuition And Fees For The Spring 2020 Semester

24.     Plaintiffs and Class members are individuals who paid the cost of tuition and

7

other mandatory fees for the Spring 2020 Semester at FSC.

25.     Spring 2020 Semester classes at FSC began on or about January 6, 2020.  Final exams for the semester ended on or around April 29, 2020.

26.     Plaintiffs and Class members paid the cost of tuition for the Spring 2020 Semester.  They also paid other mandatory fees associated with the Spring 2020 Semester, including but not limited to a $800 student health fee.

27.     Approximate tuition costs for the Spring 2020 Semester at FSC are as follows:

- Undergraduate: $18,430
- Adult Undergraduate: $326 per credit hour
- Graduate School of Education: $430 per credit hour
- Doctor of Education: $490 per credit hour
- School of Nursing: $600 per credit hour
- Master of Business Administration (M.B.A.): $1,034 per credit hour
- Master of Accountancy (M.A.C.C.): $775 per credit hour

28.     Fees paid by or on behalf of FSC students vary based on program of study.  By way of example, undergraduate students paid Defendant a technology fee of $315 per semester for the Spring 2020 Semester.

29.     The tuition and fees described in the paragraphs above are provided by way of example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

### *In Response To COVID-19, FSC Closed Campus And Cancelled All In-Person Classes*

30.     On March 12, 2020, FSC announced that because of the global COVID-19 pandemic, in-person classes would be suspended on March 13, 2020 for ten days, with classes to resume online on March 23, 2020.  Students were advised to leave campus and return home. FSC anticipated that in-person classes would resume on April 15, 2020.  However, on March 19,

2020, FSC announced that online classes would continue for the remainder of the Spring 2020 Semester.

31.     FSC did not hold any in-person classes from March 12, 2020 through the end of Spring 2020 Semester.  Classes that continued after March 12, 2020 were only provided in an online format, with no in-person instruction.  Even classes for students with concentrations in areas where in-person instruction is especially crucial (such as architecture, music, theatre, and the sciences) have only had access to online education.

32.     As a result of the closure of Defendant's facilities, Defendant did not deliver the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  Plaintiffs and the putative class are therefore entitled to a pro-rated refund of tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

33.     Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

34.     Defendant markets FSC's on-campus experience – particularly in-person collaboration – as a benefit of enrollment on FSC's website, and thus part of the basis of the bargain for the tuition and fees due.

35.     A picture speaks one thousand words.  FSC's website, by that token, contains multiple images advertising the in-person experience as integral to the FSC experience.  For instance, Defendant states on its website that "[c]ampus traditions, events, athletics, dining,

organizations, and activities are fundamental elements of the Florida Southern experience."[5]

# CAMPUS **TRADITIONS**

Central to the total Florida Southern experience, our rich traditions are among the most cherished memories for FSC students and graduates.

| FLORIDA SOUTHERN | ABOUT | UNDERGRADUATE | ADULT & GRADUATE | CAMPUS LIFE | ARTS & CENTERS | ATHLETICS | 🔍 |

## CAMPUS TRADITIONS **BRING US TOGETHER**



### BLAST OFF
This August event showcases Florida Southern's 100+ student clubs and organizations along with free food, giveaways, and activities.



### SNAKE PIT
Dubbed the "Snake Pit," the student section at Florida Southern's home athletic events is the very best place to cheer the Mocs on to victory!



### WATER DOME SPLASH
Since the Water Dome is a FSC landmark students walk by often, it's only fitting that graduating seniors join Dr. Kerr for a swim in this campus centerpiece each April.



### CONVOCATION
Convocation brings the Florida Southern community together for inspiring programs by nationally recognized speakers, authors, corporate leaders, and visionaries. These presentations spark conversation and connections across campus.



### FLAPJACK FLING
Breakfast is served...at night! Students take a break from Finals Week studies to enjoy late-night breakfast (9-11 PM) in Wynee's Bistro...all served by FSC staff and faculty! Join us for Flapjack Fling in the fall and Pancake Palooza in the spring!



### SOUTHERN TAKEOVER
Each spring semester the Association of Campus Entertainment hosts its major concert event. This show is free to students!

---

[5] https://www.flsouthern.edu/fsc-cares/for-students.aspx.

36.     And Defendant touts that it has "the nation's most beautiful campus":

FLORIDA SOUTHERN **HAS A LOT TO OFFER.**

At Florida Southern, you'll find a one-of-a-kind living and learning experience on the nation's most beautiful campus.

37.     The online learning options being offered to FSC students were subpar in practically every aspect and a shadow of what they once were, from the lack of facilities, materials, and access to faculty.  Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

38.     The remote learning options were in no way the equivalent of the in-person education putative class members contracted and paid for.  The remote education provided was not even remotely worth the amount charged class members for Spring 2020 Semester tuition. The tuition and fees for in-person instruction at FSC are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study room;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation; and

- Networking and mentorship opportunities.

39.     Studies have recognized that online learning is less beneficial or valuable to

students than in-person learning.  Recent research by Harvard and Stanford professors finds that "taking a course online, instead of in-person, reduces student success and progress in college."[6] A study conducted of public high schoolers in Chicago found students who took an online course "reported the course was more difficult" than the in-person course "and scored lower on" a posttest administered in the course.[7]  And as a New York Times article writes, "taking a class without a teacher requires high levels of self-motivation, self-regulation and organization," and students might struggle with it.[8]  In addition, students lose many benefits that only exist in in-person learning.  For example, "[d]aily interactions with teachers and peers improve [students'] skills to deal with and teach them how to live in a society.  Moreover, schools organi[z]e competitions and exams which result in the formation of skills required in day-to-day life."[9]

40.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Semester when classes moved online and campus services ceased being provided.  Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

---

[6] Eric P. Bettinger et al., *Virtual Classrooms: How Online College Courses Affect Student Success*, 107 AMERICAN ECONOMIC REVIEW 2855–2875 (2017), https://doi.org/10.1257/aer.20151193 (last visited 7/20/20).

[7] Jessica B. Heppen, et al., *The Struggle to Pass Algebra: Online vs. Face-to-Face Credit Recovery for At-Risk Urban Students*, JOURNAL OF RESEARCH ON EDUCATIONAL EFFECTIVENESS Vol. 10 (2017), https://www.tandfonline.com/doi/abs/10.1080/19345747.2016.1168500?journalCode=uree20 (last visited 7/20/20).

[8] Susan Dynarski, *Online Courses Are Harming the Students Who Need the Most Help*, NEW YORK TIMES, Jan. 19, 2018, https://www.nytimes.com/2018/01/19/business/online-courses-are-harming-the-students-who-need-the-most-help.html (last visited 7/20/20).

[9] Ludhiana Readers Collection, *Virtual Learning is Okay, but No Replacement for Classroom Lessons*, HINDUSTAN TIMES, Apr. 20, 2020, https://www.hindustantimes.com/cities/virtual-learning-is-okay-but-no-replacement-for-classroom-lessons/story-iQem8daJGDOdkECz94mcjJ.html (last visited 7/20/20).

## CLASS ALLEGATIONS

41.     Plaintiffs seek to represent a class defined as all people who paid FSC Spring 2020 Semester tuition and/or fees for in-person educational services that FSC failed to provide, and whose tuition and fees have not been refunded (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

42.     Plaintiffs also seek to represent a subclass consisting of Class members who reside in New York (the "Subclass").

43.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

44.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

45.     **Existence and predominance of common questions of law and fact.**  Common

questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

> (a)   whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;
>
> (b)   whether Defendant has provided the services for which Class and Subclass members contracted;
>
> (c)   whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;
>
> (d)   whether Defendant has unlawfully converted money from Plaintiffs, the Class and Subclass; and
>
> (e)   whether Defendant is liable to Plaintiffs, the Class, and Subclass for unjust enrichment.

46.    **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiffs.

47.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

48.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

49.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the

Class as a whole, thereby making appropriate final declaratory and/or

injunctive relief with respect to the members of the Class as a whole.

**COUNT I**
**Breach Of Contract**
**(On Behalf Of The Class And Subclass)**

50.     Plaintiffs hereby incorporate by reference the allegations contained in the

paragraphs above.

51.     Plaintiffs bring this claim individually and on behalf of the members of the Class

and Subclass against Defendant.

52.     Plaintiffs and Defendant entered into a contractual agreement where Plaintiffs

would provide payment in the form of tuition and fees and Defendant, in exchange, would

provide in-person educational services, experiences, opportunities, and other related services for

the entirety of Spring 2020 Semester.  The terms of the contractual agreement were set forth in

publications from FSC, including the FSC Spring 2020 Semester Course Portal.

53.     When Plaintiffs and Class Members sought to enter into a contractual agreement

with Defendant for the provision of educational services for Spring 2020 Semester, Plaintiffs and

Class Members viewed the Course Portal to make specific course selections prior to registering

and paying for selected courses.  Defendant's Course Portal constitutes an offer to enter a

contractual agreement.

54.     The Course Portal provided Plaintiffs and Class Members with information

regarding the courses offered, the instructor, the days and times during which the courses would

be held, and the location (including the building and room number) in which courses would be

held.

16

55.     Other publications from FSC refer to the in-person nature of FSC Spring 2020 Semester course offerings, including course specific syllabi, the FSC Academic Catalog, and FSC's website, which detail the policies, procedures, and expectations of FSC students.  Many of Defendant's publications describe the policies regarding in-person education and the importance of in-person class attendance.

56.     Plaintiffs and Class Members' payment of tuition and fees were intended to cover in-person education, experiences, and services for the entirety of the Spring 2020 Semester (January 6, 2020 through April 29, 2020).

57.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Spring 2020 Semester tuition.  Tuition for Spring 2020 Semester was intended to cover in-person educational services from January through April 2020.  In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester.

58.     Defendant materially breached the parties' contractual agreement by failing to provide in-person educational services for the entirety of the Spring 2020 Semester.  The provisions of the contract breached by Defendant include, but are not limited to the provision setting forth the details of in-person educational services as described in the Course Portal.  The Course Portal indicated a vast majority of classes would be administered in an in-person, on-campus setting.

59.     Defendant has failed to provide the contracted-for services and has otherwise not performed under the contract as set forth above by failing to provide in-person educational

services from March 12, 2020 through April 29, 2020.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring 2020 Semester tuition and fees, without providing them the benefit of their bargain.

60.     Defendant also materially breached the parties' contractual agreement by failing to provide *any* classes between March 13, 2020 and March 23, 2020, a period during which classes were scheduled to take place according to the Course Portal, Academic Catalog, and FSC Academic Calendar.  Defendant has retained monies paid by Plaintiffs and the Class for this time period, without providing them the benefit of their bargain.

61.     Plaintiffs and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breaches, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

62.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Spring 2020 Semester tuition and fees for education services not provided since FSC shut down on March 12, 2020.  Defendant should also return the portion of Spring 2020 Semester tuition and fees proportionate to the amount of time that no instruction whatsoever was provided (approximately 10 days of Spring 2020 Semester).

63.     Defendant's performance under the contract is not excused due to COVID-19. Defendant should have refunded the pro-rated portion of any education services not provided. Even if performance was excused or impossible, Defendant would nevertheless be required to

return the funds received for services it will not provide.

64.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiffs and Class Members that relate to those in-person educational services that were not provided after FSC shut down on or around March 12, 2020.  In-person educational services were not provided for approximately 50% of the Spring 2020 Semester.

**COUNT II**
**Unjust Enrichment**
**(On Behalf Of The Class And Subclass)**

65.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-49 above.

66.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

67.     Plaintiffs and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring 2020 Semester tuition and other fees in exchange for certain service and promises.  Tuition for Spring 2020 Semester was intended to cover in-person educational services from January through April 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring 2020 Semester.

68.     Defendant voluntarily accepted and retained this benefit by accepting payment.

69.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the pro-rated portion of any Spring 2020 Semester tuition and fees for education services not provided since FSC shut down on March 12, 2020.  Defendant should also return the Spring

19

2020 Semester tuition and fees proportionate to the amount of time that no instruction whatsoever was provided (approximately 10 days of Spring 2020 Semester).

70.     It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

71.     Defendant should be required to disgorge all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

**COUNT III**
**Conversion**
**(On Behalf Of The Class And Subclass)**

72.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-49 above.

73.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

74.     Plaintiffs and members of the Class and Subclass have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Spring 2020 Semester tuition and fee payments to Defendant.

75.     Defendant intentionally interfered with the rights of Plaintiffs, the Class, and Subclass when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

76.     Plaintiffs and members of the Class and Subclass demand the return of the pro-rated portion of any Spring 2020 Semester tuition and fees for education services not provided since FSC shut down on March 12, 2020, as well as tuition and fees paid for the period of March 13, 2020 through March 23, 2020, during which no instruction whatsoever was provided.

77.     Defendant's retention of the fees paid by Plaintiffs and members of the Class and Subclass without providing the educational services for which they paid, deprived Plaintiffs, Class and Subclass members of the benefits for which the tuition and fees paid.

78.     This interference with the services for which Plaintiffs and members of the Class and Subclass paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that will not be provided.

79.     Plaintiffs, Class and Subclass members are entitled to the return of pro-rated portion of any Spring 2020 Semester tuition and fees for education services not provided since FSC shut down on March 12, 2020. Plaintiff and Class members are also entitled to the return of the pro-rated portion of Spring 2020 Semester tuition and fees proportionate to the amount of time that no instruction whatsoever was provided (approximately 10 days of Spring 2020 Semester).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass;

(b)     For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)      For an order awarding Plaintiffs and the Class and Subclass their
reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

and all issues in this action so triable of right.

Dated: July 23, 2020                      Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     _/s/ Max S. Roberts_____
                Max S. Roberts

Max S. Roberts (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* app. forthcoming)
Stephen A. Beck
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
              sbeck@bursor.com

*Attorneys for Plaintiffs*