# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SARA SALERNO and LINDSAY MURILLO,

    Plaintiffs,

v.                                           Case No: 8:20-cv-1494-30SPF

FLORIDA SOUTHERN COLLEGE,

    Defendant.

_____

## ORDER

THIS CAUSE comes before the Court upon Defendant Florida Southern College's Motion to Dismiss (Dkt. 34) and Plaintiffs' Response in Opposition (Dkt. 43). The Court, upon review of the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part. Specifically, the Court agrees that Plaintiff Sara Salerno lacks standing to assert the legal claims because she was not a student of Defendant Florida Southern College. The Court also agrees that the conversion claim fails to state a claim under Rule 12(b)(6). Defendant's arguments with respect to Plaintiff Lindsay Murillo's breach of contract and unjust enrichment claims are unavailing at this motion to dismiss stage because she has adequately pled these claims.

## BACKGROUND

The Novel Coronavirus Disease 2019 ("COVID-19") pandemic has wreaked havoc on the world. In the Spring of 2020, many schools and colleges, both public and private, were forced to move their curriculum from in-person to online instruction out of concern

for the health of their students, faculty, and staff, and in response to government-mandated closures and social-distancing measures.

Plaintiffs Lindsay Murillo and her mother, Sara Salerno, bring this action on behalf of themselves and a class of similarly-situated students, contending that Defendant Florida Southern College breached its contract with its students because that contract included the promise to provide in-person educational services. The damages flowing from this alleged breach? Tuition reimbursement.

This case is novel in the sense that there is no legal precedent involving a pandemic's impact on a school's promise to provide in-person learning when doing so would be unsafe and/or against government mandates. And so, like the ripple in a pond after one throws a stone, the legal system is now feeling COVID-19's havoc with the current wave of class action lawsuits that seek tuition reimbursement related to forced online tutelage. As explained further below, Florida law recognizes that a college has a contractual relationship with its students. Murillo, a student, has alleged the elements of a breach of contract claim against Florida Southern College in her amended complaint. At this early stage in the case, that is all that is necessary. The more difficult issues will come later, at the summary judgment stage. The Court now turns to the specific facts alleged in the amended complaint, which the Court must accept as true at this stage. (Dkt. 32).

The amended complaint states that it is a class action lawsuit[1] on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at Florida Southern College, and who lost the benefit of the educational services that they contracted and paid for as a result of Florida Southern College's response to COVID-19.

Florida Southern College (the "College") is a private college with an enrollment of over 3,000 students. The College offers 50 undergraduate majors and pre-professional programs, graduate programs in nursing, business, and education, and post-graduate programs in nursing, education, and physical therapy. It has been named among the most beautiful college campuses in the country.

Plaintiffs and Florida Southern College "entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services." (Dkt. 32 at ¶3). The terms of the contractual agreement were set forth in Florida Southern College's publications, including the Spring 2020 Semester Course Portal ("Course Portal"). The Course Portal is directed at students and provides information about the courses offered, including the instructors, the days and times, and the location (including the building and room number).

Other publications refer to the in-person nature of the Spring 2020 semester course offerings, including course specific syllabi, and the Florida Southern College Academic

---

[1] The Court makes no determination at this stage whether this case is appropriate for class certification. That issue will be decided after Plaintiffs file a motion for class certification and after the matter is fully briefed.

Catalog 2019/2020 ("Academic Catalog"). The Academic Catalog details the policies, procedures, and expectations expected of the students. The Academic Catalog emphasizes that "[c]lass attendance [and] participation in engaged learning activities … are essential college requirements." *Id.* at ¶7. The Academic Catalog likewise notes that "[s]tudents are expected to attend all class and laboratory sessions on time and should be absent only for unavoidable documented reasons." *Id.* In addition, the Academic Catalog highlights the on-campus facilities, such as the Roux Library (described as an "integral part of the intellectual life of the College"), Tûtû's Cyber Café (which "contributes to the educational and social fabric of the campus"), the Rinker Technology Center, and the Nina B. Hollis Wellness Center. *Id.* at ¶8.

Florida Southern College's Spring 2020 semester commenced on or around January 6, 2020, and concluded on or around April 29, 2020. On March 12, 2020, Florida Southern College announced that because of the global COVID-19 pandemic, in-person classes would be suspended on March 13, 2020, for ten days, with classes to resume online on March 23, 2020. Florida Southern College advised students to leave campus and return home. It anticipated that in-person classes would resume on April 15, 2020.

On March 18, 2020, the College's President, Anne B. Kerr, announced in a campus-wide email that the College would "proceed with offering remote instruction for the remainder of the semester. Thus, students will not return to campus, as [] first planned, for classes to resume face-to-face on April 15th." The email also announced the decision to "close campus buildings[] … and cancel May graduation." *Id.* at ¶11.

4

Florida Southern College did not hold any in-person classes from March 12, 2020, through the end of the Spring 2020 semester. Classes that continued after March 12, 2020, were provided in an online format, with no in-person instruction. No classes were held (either in-person or online) from March 13, 2020, through March 23, 2020.

Plaintiffs allege that: "As a result of the closure of Defendant's facilities, Defendant did not deliver the educational services, facilities, access and/or opportunities that Plaintiffs and the putative Class contracted and paid for. The online learning options being offered to [the College's] students were subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. The remote learning options were in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for." *Id.* at ¶13.

With respect to Plaintiff Lindsay Murillo, she is an undergraduate student at Florida Southern College pursuing a bachelor's degree in biology. She avers that the biology program relies extensively on in-person instruction, lab work, and access to facilities. None of the abovementioned resources were available to her while in-person classes were suspended. Murillo paid approximately $18,430 in tuition, a $315 technology fee, and a $75 activity fee for the Spring 2020 semester. Murillo claims Florida Southern College failed to refund any of these fees, despite the fact that all students were required to leave campus on March 13, 2020.

The amended complaint alleges three claims: breach of contract; unjust enrichment; and conversion (Counts I-III respectively). Now, Florida Southern College moves to

5

dismiss for various grounds, including Plaintiff Salerno's lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court turns to standing first, which is a question of subject matter jurisdiction and therefore a threshold issue. The Court will then discuss whether the claims are adequately pled.

## DISCUSSION

### I. Standing

To bring a suit in federal court, a party must meet the standing requirements of Article III of the Constitution. Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

Because standing is jurisdictional, a defendant can move to dismiss a complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Id.* "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis for

6

subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (citation omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.*

"In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists" by a preponderance of the evidence. *OSI Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). When subject matter jurisdiction is faced with a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Here, Florida Southern College factually attacks Salerno's standing. The motion attaches as Exhibit A the Affidavit of V. Terry Dennis. The Affidavit states that Salerno is not a student at the College. Her daughter, Murillo, is a "twenty year old adult who recently completed her Sophomore year at the College." Exhibit A at ¶ 5. The College has no contractual agreement of any type with Salerno. Murillo executed all documents relating to her admission and attendance. Murillo did not grant Salerno access to her records or information at the College under the Federal Family Educational Rights and Privacy Act of 1974 ("FERPA"), which bars the College from disclosing educational records to parents unless the student completes and signs a FERPA authorization waiver. Murillo did not execute this waiver. Exhibit A at ¶ 9.

Florida Southern College does not maintain any contractual agreements or accounts receivable records of any kind between parents of students and the College. The College

does not pursue the parents of its students for unpaid balances. All student financial and academic records are maintained using a Student ID number, with the student's name.

The College also points to evidence that—contrary to Salerno's allegations that she paid "approximately $18,430 to [the College] for Ms. Murillo's Spring 2020 tuition," Dkt. 32 at ¶19—the College has no account in Salerno's name. The amended complaint also alleges, inconsistently, that Murillo paid this amount with her own credit card. Dkt. 32 at ¶18.

Florida Southern College argues that these facts demonstrate that the only relationship from which any legal obligations may arise is between the College and Murillo. The Court agrees. Notably, Salerno does not rebut this evidence or adequately explain how any action on Florida Sothern College's part injured her. It is also of note that the lack of injury to Salerno is clear regardless of whether Salerno provided financial support to her daughter. That arrangement was between mother and daughter. It does not establish a relationship between the College and Salerno under these facts. Accordingly, Florida Southern College's motion is granted to the extent that Salerno will be dismissed from this action for lack of standing.

## II.   Failure to State a Claim

Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*,

358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Legal conclusions, though, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

### A. Breach of Contract

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Florida Southern College acknowledges that, under Florida law, a student and a private university have a contractual relationship. *See John B. Stetson Univ. v. Hunt*, 102 So. 637, 640 (Fla. 1924); *see also Sharick v. Southeastern Univ. of Health Sciences, Inc.*, 780 So. 2d 136, 138 (Fla. 3d DCA 2000). It is also generally accepted that the terms and conditions of that contractual relationship may include the publications of

the private university. *Sharick,* 780 So. 2d at 138-39. The university's publications are terms of an "implied-in-fact contract" rather than an express contract. *Id.; see also McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) (noting that the terms of the contract are generally set forth in university catalogs, student manuals, student handbooks, and other university policies and procedures); *Ali v. Stetson Univ., Inc.*, 340 F. Supp. 2d 1320, 1328 (M.D. Fla. 2004).

The crux of the College's motion is that the amended complaint does not identify a specific contractual provision that establishes that the College had an obligation to provide "in-person educational services" for the entire Spring 2020 semester. The Court disagrees based on its careful review of the amended complaint. Throughout the amended complaint, Murillo alleges that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation. These allegations are sufficient at this early stage, especially because Florida law recognizes that the college/student contract is typically implied in the College's publications. In other words, this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous.

That being said, the Court underscores that this case is not about the quality of the College's education. Murillo acknowledges in her response that Florida law does not recognize educational malpractice cases because it is not a court's place to opine on that matter. Murillo also admits in her response that her claim is not about the College's

*decision* to move to online learning. This case is simply about an alleged promise to provide in-person learning that was allegedly breached.

Also, the Court expresses no opinion on the merits of the breach of contract claim. The Court simply holds that Murillo has adequately pled a breach of contract claim. The College's remaining arguments are more appropriate at the dispositive motion stage.

### B. Unjust Enrichment

The College's next argument is that the unjust enrichment claim is improper because the College does not contest that a contract exists. Regardless of whether a contract exists, the College disputes the merits of the breach of contract claim. Even more important, this Court has consistently held that a plaintiff may allege alternative claims in her complaint. *See. e.g., Rea v. It Works! Glob., Inc.,* No. 8:19-CV-599-T-30JSS, 2019 WL 5722479, at *2 (M.D. Fla. June 21, 2019) ("This Court permits pleading an unjust enrichment claim in the alternative.") (citing *United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, 8:14-CV-211-T-30MAP, 2014 WL 5420801, at *4 (M.D. Fla. Oct. 22, 2014) ("Plaintiffs are permitted to plead alternative causes of action ... Although USA may not recover under both theories of liability, at this stage, it is premature to dismiss the equitable relief claims.")). Accordingly, Murillo's unjust enrichment claim may remain for now, in the alternative.

### C. Conversion

Finally, the College argues, in relevant part, that the conversion claim fails to identify the type of property that was deprived. The Court agrees. "Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another

11

of his property, permanently or for an indefinite time." *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007). "[T]he elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Joe Hand Promotions, Inc. v. Creative Entertainment, LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013).

The type of property at issue here, in-person learning, is intangible and not the proper subject of a conversion claim for the reasons stated in the College's motion. *See* (Dkt. 34 at 24-25). Notably, an obligation to pay money, like Murillo's claim for tuition reimbursement, is also insufficiently tangible to qualify as "property" under these facts. *See Rosen v. Marlin*, 486 So. 2d 623, 625–26 (Fla. 3d DCA 1986) ("This is not a case where a party intentionally received a specifically identifiable sum of money knowing that he had no right to take it and who refused to give it back as was the case in *Senfeld v. Bank of Nova Scotia Trust Company Cayman, Ltd.,* 450 So. 2d 1157 (Fla. 3d DCA 1984). This is not a case where a party refused to pay over to the demanding party a specific fund capable of separate identification required to be deposited into a special account as was the case in *Aero International Corp. v. Florida National Bank of Miami,* 437 So. 2d 156 (Fla. 3d DCA 1983)"). Accordingly, the conversion claim will be dismissed with prejudice.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Florida Southern College's Motion to Dismiss (Dkt. 34) is granted in part and denied in part.

2. Plaintiff Sara Salerno is dismissed without prejudice from this action for lack of standing. The Clerk of Court is directed to terminate her as a Plaintiff in this case.

3. The breach of contract and unjust enrichment claims (Counts I and II) are not dismissed.

4. The conversion claim (Count III) is dismissed with prejudice.

5. Defendant shall file its answer to Counts I and II of the amended complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida, this September 16, 2020.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel/Parties of record